# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| NAVADA N. FOSTER | CIVIL ACTION NO. 07-1519 |
| VS. | SECTION P |
| OUACHITA CORRECTIONAL CENTER | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on September 12, 2007, by *pro se* plaintiff Navada Nathon. Foster.  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections.  He is incarcerated at the Ouachita Parish Correctional Center (OCC), Monroe, Louisiana.  He complains that the defendant has interfered with his First Amendment right to practice his chosen religion. The OCC and its Warden, Don Wheelis,  have been  named defendants.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous.

### *Statement of the Case*

Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections.  He has been incarcerated at OCC since October 2006. [See 3:07-cv-1253] He claims that he is a Muslim.  He also claims that he "... explained to Lieutenant ... that we as Muslims had month of fasting coming up and they refused to imply [sic] to my request to

1

exercise the First Amendment..." He contends that the defendants "refuse to set up a worship program for ... Muslims as they have for Christians."  He claims that the defendants "... refuse to place Muslims on a non-pork diet ..." and that they fail to "... provide assistance during the month of Ramadan." Finally, he contends that the OCC chaplain and kitchen supervisor are "unexperienced."

On August 28, 2007, plaintiff submitted an Administrative Remedy Procedure grievance to the staff at OCC stating as follows:

> This complaint is concerning my religion which is Al-Islam, and under the United States Congress has passed law called 'Religious Freedom Act' that no one including jails, prisons, etc. can place restrictions on religions. Therefore this administration must honor my right to exercise what is guaranteed in the United States Constitution called Religious Freedom, under the 8th Amendment. What I'm trying to get done or prepared is for our month of fasting which is coming up, and we are unable to exercise those events because we are unprepared, cause we have no Holy Qurans which we have to read everyday while fasting. And our food has to be prepared to brake [sic] fast before and after sun set.

On the same date, the prison Shift Supervisor responded to plaintiff's grievance as follows: "You have a right to practice whatever religion you want.  No one is stopping you from doing that.  We have guide lines we must follow also.  You must adhere to those as well.  If you want something that jails can't provide, then I suggest you stay out of them." [doc. 1-1, p. 5]

Plaintiff rejected this response and appealed.  On August 30, 2007, the Lieutenant replied, "You may practice your religion.  We cannot hinder you.  We do not have to provide special food."  Plaintiff rejected this response and appealed.  On August 30th, the Assistant Warden replied, "If you can have someone send you a soft cover copy of your holy book from the publisher you can have it.  We are not required to observe your fasting or food preparation.  You may seek forgiveness from Allah for your inability to comply with the edicts." [doc. 1-1, p. 6]

Plaintiff submitted his complaint on September 6, 2007.

## *Law and Analysis*

### *1. Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2

F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118

L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be

granted if it appears that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint.  Of course, in making this determination, the

court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n. 4 (5th Cir.1991).  A district court may dismiss a prisoner's civil rights complaint

as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but

they are given broad discretion in determining when such complaints are frivolous.  *Macias v.*

*Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a

3

constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).  Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint and exhibits  provide a detailed description of the facts relied upon to support his specific theories of liability.  Therefore, further amendment of these pleadings would serve no useful purpose.  Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that the plaintiff's claims are frivolous.

## 2. Juridical Person

Plaintiff has named the Ouachita Corrections Center as a defendant.  Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  Thus, Louisiana law governs whether OCC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

OCC is apparently a parish corrections facility operated by the Sheriff of Ouachita Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also,  *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that

4

prisoners are properly cared for, fed and clothed.)] As such, it is not a "juridical person" and plaintiff cannot maintain suit against this entity.

### 3. Interference with Religion

Plaintiff claims that his right to practice Islam has been curtailed by the prison officials at OCC.  Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives.  See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349.  The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice;  (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;  (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987),

*Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that his right to freely exercise his religion has been impaired as follows: (a) prison officials have refused to "provide assistance" to plaintiff and his co-religionists with regard to their obligation to fast and read scripture during the month of Ramadan; (b) prison officials have refused "... to set up a worship program..." for Muslims housed at OCC; and, (c) prison officials have refused to "place Muslims on a non-pork diet."

With regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have underlined prohibited him from practicing his religion.  Indeed, according to the available evidence, plaintiff has never been prohibited from practicing his religion.   [See doc. 1-1, pp. 5-6]

The second and forth prongs of the *Turner* test, address whether "alternative means" of practicing his religion have been made available to the plaintiff.  In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).  As shown above, the record herein does not establish that plaintiff was denied the right to practice his religion at any time.  In *O'Lone v. Estate of Shabazz, supra*., the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46.  The Supreme

6

Court considered the evidence supplied by the prison administration  regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion.  The Court then noted that the plaintiff-inmates were not deprived of <u>all</u> forms of religious exercise.  Based upon these facts,  the Supreme Court held that the "ability on the part of [the inmates] to participate in <u>other religious observances</u> of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

To the extent that plaintiff implies that his Equal Protection rights were violated under the Fourteenth Amendment with respect to his ability to practice his religion in a manner similar to that permitted by Christians at OCC, such a claim likewise lacks merit.  This is so because,  "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) ( citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)).  The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).   Again, prison administrators are obliged only to provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322 n. 2, 92 S.Ct. 1079. Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff <u>has not, nor can he show that he has been deprived of all means of religious expression.</u>

With regard to the dietary complaints (Ramadan and a non-pork diet), plaintiff's claim

fares no better.  Dietary issues are clearly related to legitimate penological interests in providing proper nutritious meals to all the prisoners without undue cost.  *Baranowski v. Hart*, 486 F.3d 112 (5th Cir.2007) (holding that prison officials failure to provide kosher meals did not violate inmates' free exercise rights). The Fifth Circuit has held that the first factor in the *Turner* test, whether there is a rational relationship between the regulation and the legitimate government interest advanced, is the controlling question, and the other factors merely help a court determine if the connection is logical. *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir.1992) (commenting that neither *Turner* nor *O'Lone* require courts to weigh evenly, or even consider the other three factors). Thus, the dietary complaints are clearly frivolous under established Fifth Circuit and Supreme Court jurisprudence.

Finally, plaintiff has not been denied access to holy scriptures.  He has been permitted to possess a soft-cover edition of the Quran. [doc. 1-1, p. 6]

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been violated. See *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which prohibited Muslim inmates from attending Friday services was not unconstitutionally restrictive because it satisfied all four "reasonableness" considerations).

"[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon ... religious gatherings do not necessitate the identification of a compelling state interest.")  Accordingly, the undersigned concludes that plaintiff's First Amendment free exercise of religion claim  is frivolous.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 30th day of October, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

9