# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **NAVADA N. FOSTER** | **CIVIL ACTION NO. 07-1519** |
| **VS.** | **SECTION P** |
| **OUACHITA CORRECTIONAL CENTER** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the Court is *pro se* plaintiff Navada N. Foster's civil rights complaint filed *in forma pauperis* on September 12, 2007. Plaintiff claimed that his First Amendment right to religious freedom was curtailed by prison regulations in effect at the Ouachita Corrections Center (OCC) during his incarceration at that facility. [rec. doc. 1] On October 30, 2007, the undersigned authored a Report recommending dismissal of the complaint as frivolous.[1] [rec. doc.

---

[1] The undersigned reviewed plaintiff's complaint and associated exhibits and concluded, "Plaintiff claims that his right to practice Islam has been curtailed by the prison officials at OCC. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that his right to freely exercise his religion has been impaired as follows: (a) prison officials

1

have refused to "provide assistance" to plaintiff and his co-religionists with regard to their obligation to fast and read scripture during the month of Ramadan; (b) prison officials have refused "... to set up a worship program..." for Muslims housed at OCC; and,
(c) prison officials have refused to "place Muslims on a non-pork diet."

With regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have <u>prohibited</u> him from practicing his religion. Indeed, according to the available evidence, plaintiff has never been prohibited from practicing his religion.     [See doc. 1-1, pp. 5-6]

The second and forth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, <u>the prison affords the inmates opportunities to exercise their faith</u>." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). As shown above, the record herein does not establish that plaintiff was denied the right to practice his religion at any time. In *O'Lone v. Estate of Shabazz, supra.*, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of <u>all</u> forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in <u>other religious observances</u> of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

To the extent that plaintiff implies that his Equal Protection rights were violated under the Fourteenth Amendment with respect to his ability to practice his religion in a manner similar to that permitted by Christians at OCC, such a claim likewise lacks merit. This is so because, "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) ( citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)). The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Again, prison administrators are obliged only to provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322 n. 2, 92 S.Ct. 1079. Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff <u>has not, nor can he show that he has been deprived of all means of religious expression.</u>

With regard to the dietary complaints (Ramadan and a non-pork diet), plaintiff's claim fares no better. Dietary issues are clearly related to legitimate penological interests in providing proper nutritious meals to <u>all</u> the prisoners without undue cost. *Baranowski v. Hart*, 486 F.3d 112 (5th Cir.2007) (holding that prison officials failure to provide kosher meals did not violate inmates free exercise rights). The Fifth Circuit has held that the first factor in the *Turner* test, whether there is a rational relationship between the regulation and the legitimate government interest advanced, is the controlling question, and the other factors merely help a court determine if the connection is logical. *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir.1992) (commenting that neither *Turner* nor *O'Lone* require courts to weigh evenly, or even consider the other three factors). Thus, the dietary complaints are clearly frivolous under established Fifth Circuit and Supreme Court jurisprudence.

Finally, plaintiff has not been denied access to holy scriptures. He has been permitted to possess a soft-cover edition of the Quran. [doc. 1-1, p. 6]

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been violated. See *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which <u>prohibited</u> Muslim inmates from attending Friday services was not unconstitutionally restrictive because it satisfied all four "reasonableness" considerations).

"[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of*

2

4] On January 30, 2008, the Court rejected the recommendation and noted, "Because additional facts and analysis are necessary before the Court can rule on the Report and Recommendation, Foster is hereby given sixty (60) days from the date of this order, until March 31, 2008, to amend his complaint and provide additional facts about how Defendants' policies interfere with his religious practices. Foster should state how often pork is served at OCC and describe the type and availability of pork substitutes on the days that pork is served. Foster should also explain how many days, if any, he was permitted to fast during Ramadan. Foster should describe with particularity the opportunities for Muslim inmates to practice their faith at OCC. Foster should also include any other facts that support his claims." The Court then remanded the matter for reconsideration "... of the new facts alleged by Foster." [rec. doc. 5, pp. 1-2]

Plaintiff did not respond to the order and therefore, on May 9, 2008, the Court ordered Foster to show cause why his complaint should not be dismissed. [rec. doc. 7] On May 28, 2008, plaintiff advised the Court that he had been transferred to the Union Parish Detention Center in Farmerville, Louisiana on May 2, 2008. [rec. doc. 13] The matter was inadvertently dismissed on June 23, 2008 [rec. docs. 9 and 10]; however, when plaintiff's whereabouts were discovered, the Court vacated the order of dismissal and reinstated the complaint. In so doing, the Court again directed Foster "... to provide additional facts about how Defendants' policies interfered with his religious practices as previously instructed..." [rec. doc. 14]

On September 9, 2008, plaintiff responded with a terse hand-written letter to the Court

---

*Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon ... religious gatherings do not necessitate the identification of a compelling state interest.") Accordingly, the undersigned concludes that plaintiff's First Amendment free exercise of religion claim is frivolous." [rec. doc. 4, pp. 5-8]

3

which stated, "OCC is in violation of my First Amendment [rights] [be]cause I have [the] right to practice and exercise my religion. And the fact still remains they allow Christianity practice but not the practice of Islam. And on the month of Ramadan we were not privileged to fast at all they denied our privilege to prepare or attend but forced us to attend Christian programs..." [rec. doc. 15]

*Law and Analysis*

In his original complaint plaintiff alleged that (1) the defendants, notwithstanding plaintiff's explanation of the Ramadan fast to a Lieutenant, "... refused to imply [sic] to my request to exercise the First Amendment..."; (2) the defendants "... refuse to set up a worship program for ... Muslims as they have for Christians..."; (3) the defendants "... refuse to place Muslims on a non-pork diet" ; (4) that the defendants refuse to "... provide assistance during the month of Ramadan..."; and, (5) that the "... chaplain is unexperienced [sic] and kitchen supervisor with no understanding as to what his duties are as the chaplain of a prison..." [rec doc. 1]

He also provided copies of an Administrative Remedies Procedure Grievance which the undersigned also considered as a factual basis for plaintiff's original complaint. In the ARP dated August 28, 2007, plaintiff alleged that under Federal law, "... no one, including jails, prisons, etc. can place restrictions on religion. Therefore this administration must honor my right to exercise what is guaranteed in the United States Constitution ... what I'm trying to ... get done or prepared is for our month of fasting which is coming up and we are unable to exercise these events because we are unprepared because we have no Holy Quran's which we have to read everyday while fasting. And our food has to be prepared to brake [sic] fast before and after sun

set..." [rec. doc. 1, p. 5] In response to this ARP, OCC officials advised plaintiff that he was indeed free to practice his religion, and, that soft cover copies of the Quran would be permitted, but that plaintiff would have to obtain copies from the publisher. [rec. doc. 1, pp. 5-6]

The Court ordered plaintiff to "... provide additional facts about how Defendants' policies interfere with his religious practices." He was ordered to "... state how often pork is served at OCC and describe the type and availability of pork substitutes on the days that pork is served." He was also directed to "... explain how many days, if any, he was permitted to fast during Ramadan." Finally, he was directed to "...describe with particularity the opportunities for Muslim inmates to practice their faith at OCC." [rec. doc. 5]

In his response to this Court's order plaintiff alleged only two facts: (1) that the defendants allow the practice of Christianity, but not the practice of Islam; and, (2) that during Ramadan, the defendants were not allowed to fast, "... prepare or attend..." but were forced to attend Christian programs. [rec. doc. 15]

Plaintiff has ignored the Court's order. His amended complaint adds nothing to the original claims for relief. Therefore, for the reasons provided in the original Report and Recommendation [rec. doc. 4],

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 22nd day of September, 2008.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE